UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| CHERYL A. KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:16-CV-397-TLS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| ACTING COMMISSIONER OF THE | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The Plaintiff, Cheryl A. King, seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Supplemental Security Income disability benefits. The Plaintiff argues that the Commissioner wrongfully denied her Social Security Disability benefits and erred by failing to develop the record, improperly evaluating her obesity, failing to build an accurate and logical bridge from the evidence to the conclusion, failing to incorporate all of her medically determinable impairments into her Residual Functional Capacity, improperly evaluating lay witness testimony, and failing to consider the impact of her inability to afford treatment.

**BACKGROUND**

**A.     Procedural Background**

On May 28, 2013, the Plaintiff applied for Supplemental Security Income, alleging disability beginning on May 28, 2013. (R. 26.) The Social Security Administration (SSA) denied her claim initially and upon reconsideration. (R. 26.) On March 10, 2015, the Plaintiff appeared

with counsel and testified at a hearing before an administrative law judge (ALJ). (R. 26.) A vocational expert also testified. (R. 26.) On June 19, 2015, the ALJ denied the Plaintiff's application, finding she was not disabled as of May 28, 2013, the date her application was filed. (R. 26–38.) On September 29, 2016, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 5.)

On November 21, 2016, the Plaintiff filed this claim [ECF No. 1] in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA since her alleged onset date, May 28, 2013. (R. 28.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that

the Plaintiff had multiple severe impairments, including type II diabetes, ulcerative colitis requiring Prednisone therapy, obesity and hypertension, depression/bipolar disorder, and posttraumatic stress disorder as of her alleged onset date. (R. 28); 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work and had lasted for at least twelve months as required under the statute. (R. 28.) The ALJ found that the Plaintiff's other alleged or diagnosed impairments, including alcohol abuse, glaucoma, back and joint pain, a thyroid condition, sleep paralysis, chronic obstructive pulmonary disease, and periodic blurred vision, were not severe impairments because they did not significantly limit the Plaintiff's physical or mental ability to do basic, work-related activities. (R. 28–30.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform a range of sedentary work as defined in 20 C.F.R. § 416.967(b), except that she was further limited to:

3

> lifting, carrying, pushing, and pulling up to 20 pounds occasionally and 10 pounds frequently; [sitting] up to at least six out of eight hours in an eight hour workday; standing/walking in combination, up to at least six out of eight hours in an eight hour workday, only occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, ladders, ropes, and scaffolds; cannot understand, remember, or carry out detailed or complex job instructions, but can perform simple, repetitive tasks on a sustained basis; no sudden or unpredictable workplace changes; cannot perform tasks requiring intense/focused attention for prolonged periods; needs work at a flexible pace, where the employee is allowed some independence in determining either the timing of different work activities, or pace of work; and only casual/superficial interactions with others, including supervisors, coworkers, and the general public.

(R. 32.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of her alleged onset date. The ALJ found that the Plaintiff's impairments, either singly or in combination, did not meet or medically equal the severity of a listed section. The ALJ then assessed the Plaintiff's RFC by evaluating the objective medical evidence and the Plaintiff's subjective symptoms. The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 33.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (R. 33.) The Plaintiff testified that, among other issues, she experiences "chronic and constant diarrhea, and aggravated episodes of chronic abdominal pain and diarrhea once every two months lasting for 5 to 7 days"; that she was "on long-time prednisone medication for this condition," but "no longer takes it because it does no good"; that "her longtime inflammatory bowel disease condition is so pervasive that it may affect other bodily organs or functioning" and her "current joint pain problems could be a result of her inflammatory bowel disease"; and that she struggles with non-insulin-dependent diabetes, with neuropathy and numbness. (R. 33.) Due to her impairments, the Plaintiff testified that she "retained the ability to walk 1/2 a block, stand 3 minutes, sit for an

hour or two, lift and/or carry 5 pounds, never bend, grasping is painful, and 3 steps is a struggle." (R. 33.) She also testified that she experiences "continued flashbacks from her childhood," "racing thoughts, crying spells, and a desire to isolate." (R. 33.) She is "unable to leave the house very often and she experiences auditory hallucinations." (R. 33.) The Plaintiff's roommate and friend of twenty years also opined that the Plaintiff was unable to work and that her conditions were worsening every day. The ALJ concluded that the Plaintiff's subjective testimony was not supported by the objective medical evidence or treatment records, and thus, the ALJ discounted the Plaintiff's subjective symptoms, finding the Plaintiff not credible. (R. 34–35.) The ALJ also discredited the Plaintiff's roommate's testimony, finding that the roommate's "unsupported observations and conclusion is understandably bias[ed] and motivated by the potential for secondary gain." (R. 36.)

Turning to the objective medical evidence, the ALJ noted that in July of 2013, a consultative examiner diagnosed the Plaintiff with uncomplicated diabetes mellitus and ulcerative colitis with purported chronic symptoms and long-term Prednisone therapy. Other than the "medication management of these conditions, with an actual discontinuation of the Prednisone at the claimant's prerogative," the ALJ found no supportive evidence of record that the Plaintiff's physical impairments were debilitating. As to the Plaintiff's mental impairments, medical records showed sporadic treatment. The ALJ found that the "mental health treatment and evaluative records do not support the claimant's allegations of debilitating mental health symptomatology" and that it was "apparent that the claimant was not trying to improve her condition." (R. 34.)

The Plaintiff's past relevant work includes that of a skilled cook and an unskilled cashier. (R. 36.) The ALJ concluded that the Plaintiff was not capable of performing any past relevant

work. (R. 36.) However, relying on the vocational expert's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform (20 C.F.R. 416.969, and 416.969(a))." (R. 37.) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of her alleged onset date. (R. 38.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. The court will "conduct

a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the ALJ did not properly consider the impact of her inability to afford treatment.

The ALJ acknowledged that the Plaintiff "indicated no consistent mental health care treatment due to lack of funds." (R. 33.) But, the ALJ emphasized, the plaintiff "conceded that she had only went to [the mental health treatment facility] twice in the past." (R. 33.) The ALJ also found the Plaintiff's claims "further discredited by the discontinuation of all treatment for her inflammatory bowel condition." (R. 35.) The ALJ noted the lack of evidence of treatment throughout the written opinion, stating, for example: "no MRI evidence was ultimately

7

submitted" (R. 29); "[m]oreover, there is no evidence of treatment" (R. 29); "there is no evidence of major treatment for this condition" (R. 30); "the record includes no mental health treatment notes which make mention of decompensation" (R. 32); "[t]here is also no evidence of any face-to-face treatment since this . . . discharge" (R. 34). Specifically addressing the Plaintiff's credibility, the ALJ stated: "In sum, the claimant's credibility is significantly diminished by the fact that she suffers from multiple physical and mental difficulties but receives no major treatment for any of them. Specifically she really has no primary care physician and there are no apparent treatment records from 2014–2015 other than medication requests." (R. 34.) At the time, the Plaintiff had applied for Medicaid twice and been turned down both times. (R. 572–73.)

The Plaintiff therefore argues that the ALJ improperly held the Plaintiff's failure to consistently obtain treatment against her credibility. The Court affirms that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (citation omitted). "ALJs have a duty to consider factors like inability to travel, mental illness, or economic constraints that may have prevented claimants from seeking [or] receiving medical care." *Orienti v. Astrue*, 958 F. Supp. 2d 961, 977 (N.D. Ill. 2013).

In this case, though the ALJ noted that the level of impairment that the Plaintiff claimed based on her multiple physical and mental conditions was unsupported by the record, (R. at 36), the Court remands this case to the ALJ to the extent that the ALJ predicated its adverse credibility determination on the Plaintiff's failure to obtain regular treatment for her conditions. Because the Court is remanding on this issue, the Court need not consider the remainder of the parties' arguments.

## CONCLUSION

For the reasons stated above, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order.

SO ORDERED on October 31, 2017.

s/ Theresa L. Springmann<br>
CHIEF JUDGE THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT